UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FRED NEKOUEE, individually,                           :
                                                       :
                     Plaintiff,                        :
                                                       :
vs.                                                    :   Case No. 4:19-cv-0219
                                                       :
CHPA ENTERPRISES, INC.,                               :
a Missouri corporation,                                :
                                                       :
                     Defendant.                        :
_____/

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other

mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues

the Defendant, CHPA ENTERPRISES, INC., a Missouri corporation (sometimes referred to as

"Defendant"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and

costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.       Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County

of Hillsborough.

2.       Defendant's property, Americas Best Value Inn & Suites, has an address of 1310

Bass Pro Drive, St. Charles, Missouri 63301, and is located in the County of St. Charles

("America's Best Value Inn & Suites").

3.       Venue is proper in the Eastern District of Missouri because the situs of the property

lies in this judicial district.   The Defendant's property is located in and does business within this

judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

6.      The place of public accommodation that the Defendant owns, operates, leases or leases to is America's Best Value Inn & Suites.

7.      America's Best Value Inn & Suites is a place of public accommodation.

8.      Defendant is responsible for complying with the obligations of the ADA.

9.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

10.      Mr. Nekouee travels to the St. Louis metropolitan area every three to six months to visit heavy equipment dealerships, where he assists his brother to compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment.

11.      Plaintiff Fred Nekouee has visited the St. Louis area near the America's Best Value Inn & Suites in June 2015; June 2016; September 2017; December 2017; March 2018; July 2018; September 2018; and January 2019.

12.      Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the America's Best Value Inn & Suites which forms the basis of this lawsuit where he checked in on July 9, 2018 and checked out on July 10, 2018, and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to the heavy equipment dealerships he visits in the St. Louis area, but he is deterred from doing so until the

2

barriers to access are removed.  He has definite plans to return to the St. Louis area in March 2019.

13.   The Plaintiff, Fred Nekouee, likes to stay at moderately-priced hotels like the America's Best Value Inn & Suites near the heavy equipment dealerships he visits.

14.   For the reasons set forth in paragraphs 10 through 13 and 23 of this Complaint, Mr. Nekouee plans to return to the America's Best Value Inn & Suites.

15.   The Plaintiff has encountered architectural barriers at the subject property.  The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, in access aisles and of walking surfaces, and have impaired his use of the restrooms and his use of the accessible guestroom 102 in the America's Best Value Inn & Suites.

16.   The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

17.   The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

18.   Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

19.   On his visit to the America's Best Value Inn & Suites, the Plaintiff encountered excessively steep running slopes and cross slopes in its parking lot, access aisles and walking surfaces (sidewalks).

20.   The Plaintiff encountered barriers to access the restrooms in the lobby and accessible room 102 of the America's Best Value Inn & Suites.

21.     The Plaintiff is deterred from visiting the America's Best Value Inn & Suites, even though the America's Best Value Inn & Suites is close to the heavy equipment dealerships he visits in the area, because of the difficulties he will experience in the restrooms, lobby, accessible room 102, parking lot, access aisles and walking surfaces (sidewalks) until the property is made accessible to him in a wheelchair.

22.     On January 28, 2019, the Plaintiff visited America's Best Value Inn & Suites again to see if any of the barriers to access he encountered and observed on his stay in July 2018 had been removed, and it appeared to be in the same condition in the parking lot and lobby, so he decided to stay at another hotel.

23.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 27 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

24.     Fred Nekouee desires to visit the America's Best Value Inn & Suites not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

25.     The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

26.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26,

1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

27.     Preliminary inspections of the America's Best Value Inn & Suites have shown that violations and barriers to access exist there.   The violations and barriers to access that Fred Nekouee personally encountered or observed on his visit to the America's Best Value Inn & Suites include, but are not limited to:

**PARKING AREA**

a.   (i) In the parking lot, one of the two parking spaces for disabled patrons does not have the signage and international symbol of accessibility.   (ii)   This lack of signage is in violation of Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1. (iii) The Plaintiff observed this lack of accessible signage, and it made it difficult for him to find a parking space, and it deters him from visiting America's Best Value Inn & Suites.   (iv) The action required to install such signage is easily accomplishable and able to be carried out without much difficulty or expense.

b.   (i) In the parking lot, none of the parking spaces for disabled patrons has van accessible signage.   (ii) None of the parking spaces for disabled individuals has van accessible signage, in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   (iii) The Plaintiff observed this lack of van accessible signage, and it deters him from visiting America's Best Value Inn & Suites.   (iv) The action required to install van accessible signage is easily accomplishable and able to be carried out without much difficulty or expense.

c.   (i) In the parking lot, the back section of the parking space (toward the back of a car parked facing toward the Inn) shown in the photograph below has a running slope as

steep as about 1:12 (8.3%) and steeper than a slope of 1:48 (2%).   (ii) This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) In his wheelchair, the Plaintiff encountered this slope, and it made his wheelchair unstable.   (iv)  The action required to make this parking space level is easily accomplishable and able to be carried out without much difficulty or expense.





d.  (i)   In the parking lot, the middle section of the parking space for disabled patrons shown in the photograph below has a running slope as steep as about 1:18.2 (5.5%) and steeper than a slope of 1:48 (2%).   (ii) This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this slope and it made his wheelchair unstable.   (iv) The action required to make this parking space level is easily accomplishable and able to be carried out without much difficulty or expense.





e.  (i) In the parking lot, the middle section of the parking space for disabled patrons to the left of the parking space shown in subparagraph (d) above as one faces the Inn has a running slope as steep as about 1:14.5 (6.9%) and steeper than a slope of 1:48 (2%).   (ii) This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. (iii) The Plaintiff encountered this slope, and it made his wheelchair unstable.   (iv) The action required to make this parking space level is easily accomplishable and able to be carried out without much difficulty or expense.

f.  (i) The change in level in the sidewalk in front of the entrance door closest to the accessible parking spaces shown in the photographs below is about 1.25 inches and more than a change in level of 0.25 of an inch.   (ii) This change of level is greater than 0.25 of an inch, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.2.   (iii) While moving in his wheelchair, the Plaintiff encountered this change in level and it stopped the forward movement of his wheelchair and it made his wheelchair unstable.   (iv) The action required to make this sidewalk level is easily accomplishable and able to be carried out without much difficulty or expense.





g.  (i) In the parking lot, the running slope of the back section of the access aisle (oriented furthest from the building) shown in the photographs below serving the parking spaces for disabled patrons is as steep as about 1:21.7 (4.6%) and steeper than a slope of 1:48 (2%).  (ii)  This running slope in this access aisle is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.  (iii) While moving in his wheelchair, the Plaintiff encountered this slope in this access aisle, and it made his wheelchair unstable, and he required assistance to ascend this access aisle in his wheelchair.  (iv) The action required to make this access aisle level is easily accomplishable and able to be carried out without much difficulty or expense.





h.   (i) In the parking lot, the running slope of the back section of the access aisle (oriented furthest from the building) shown in the photographs below serving the parking spaces for disabled patrons is as steep as about 1:11.8 (8.5%) and steeper than a slope of 1:48 (2%).  (ii)   This running slope in this access aisle is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.  (iii)

While moving in his wheelchair, the Plaintiff encountered this slope in this access aisle, and it made his wheelchair unstable, and he required assistance to ascend this access aisle in his wheelchair.  (iv) The action required to make this access aisle level is easily accomplishable and able to be carried out without much difficulty or expense.





**ENTRANCE DOOR, INTERIOR LOBBY AREA**

i.   (i) The force needed to open the door to the lobby is about 8 pounds and is greater than 5 pounds.   (ii) The force needed to open the door to the lobby exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open the door to the lobby, the Plaintiff had difficulty opening and entering this door while in his wheelchair.   (iv) The action required to reduce the force necessary to fully open this door to the lobby is easily accomplishable and able to be carried out without much difficulty or expense.

j.   (i) The dollar bill inlet to the soda machine and to the snack vending machine are both about 54 inches above the floor and higher than 48 inches above the floor.   (ii) These dollar bill inlets are higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) From his wheelchair, the Plaintiff tried but could not insert dollar bills into these dollar bill inlets to use the soda or snack machines. (iv) The actions required to lower the legs of the soda machine and the snack vending machine or to replace them is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN THE LOBBY**

k.   (i) In the men's restroom in the lobby, the seat height of the water closet above the floor is less than 17 inches.   (ii) This seat height of this water closet or toilet above the finish floor is not between a minimum of 17 (430 mm) inches and a maximum of 19 inches (485 mm) above the finish floor measured to the top of the seat, in violation of Federal Law 2010, ADAAG § 604.4.   (iii) The Plaintiff used this toilet seat, and due to its height

above the floor it was very difficult to sit down on and to get up from this toilet seat.   (iv) The action required to replace this toilet seat or the toilet is easily accomplishable and able to be carried out without much difficulty or expense.

l.    (i) In the men's restroom in the lobby, the rear wall grab bar only extends about 15 inches on one side and about 21 inches on the other side from the centerline of the water closet and does not extend a minimum 12 inches on one side and 24 inches on the other side of the centerline of the water closet.   (ii) This rear wall grab bar does not extend a minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side from the centerline of the water closet, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) The Plaintiff used this rear wall grab bar to transfer himself from his wheelchair to the toilet, and because of its dimensions, it made it difficult for him to do so. (iv) The action required to replace this grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

m.    (i) In the men's restroom in the lobby, the toilet seat cover dispenser is about 56 inches above the floor and higher than 48 inches above the floor.   (ii) This toilet seat cover dispenser outlet is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) The Plaintiff tried but could not reach a toilet seat cover due to the height of the dispenser outlet above the floor.   (iv) The action required to relocate this toilet seat cover dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

n.    (i) In the men's restroom in the lobby, the bottom edge of the mirror's reflecting surface is about 52 inches above the floor and higher than 40 inches above the floor.   (ii)

13

As shown in the photograph below, the bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) from his wheelchair, the Plaintiff could not see his full face in this mirror. (iv) The action required to relocate this mirror's reflecting surface is easily accomplishable and able to be carried out without much difficulty or expense.



o.     (i) In the men's restroom in the lobby, the coat hook is about 68 inches above the floor and higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff observed the height of this coat hook above the floor, and it deters him from visiting America's Best Value Inn & Suites.   (iv) The action required to relocate this coat hook is easily accomplishable and

able to be carried out without much difficulty or expense.

p.    (i) In the men's restroom in the lobby, the liquid soap dispenser outlet is about 51 inches above the floor and higher than 48 inches above the floor.  (ii) This liquid soap dispenser is higher than 48 inches (1220 mm) above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.  (iii) Due to its height above the floor, the Plaintiff tried but could not reach the outlet to this liquid soap dispenser to get soap to wash his hands. (iv) The action required to relocate this liquid soap dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

q.    (i) In the men's restroom in the lobby, the lavatory valves and pipes under the sink are not fully insulated.  (ii) The lavatory valves and pipes under this sink are not fully insulated, in violation of Federal Law 2010, ADAAG § 606.5.  (iii) The Plaintiff used this sink, and he risked skin burns to his legs and injury because the lavatory pipes and valves are not fully insulated.  (iv) The action required to fully insulate the lavatory valves and pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.

r.    (i) In the men's restroom in the lobby, the door lock requires tight grasping, pinching, or twisting to operate.  (ii) This door lock requires tight grasping, pinching, or twisting of the wrist to operate, in violation of Federal Law 2010, ADAAG §§ 404.2.7 and 309.4.  (iii) The Plaintiff tried could not operate this door lock with a closed fist or loose grip.  (iv) The action required to replace this door lock is easily accomplishable and able to be carried out without much difficulty or expense.

## WOMEN'S RESTROOM IN THE LOBBY

s.    The Plaintiff encountered barriers to access in the men's restroom in the lobby, so he checked out the women's restroom.   (i) In the women's restroom in the lobby, the seat height of the water closet above the floor is less than 17 inches.   (ii) This seat height of this water closet or toilet above the finish floor is not between a minimum of 17 (430 mm) inches and a maximum of 19 inches (485 mm) above the finish floor measured to the top of the seat, in violation of Federal Law 2010, ADAAG § 604.4.   (iii) The Plaintiff used this toilet seat, and due to its height above the floor it was very difficult to sit down on and to get up from this toilet seat.   (iv)   The action required to replace this toilet seat or the toilet is easily accomplishable and able to be carried out without much difficulty or expense.

t.    (i) In the women's restroom in the lobby, the rear wall grab bar only extends about 14 inches on one side and about 22 inches on the other side from the centerline of the water closet and does not extend a minimum 12 inches on one side and 24 inches on the other side of the centerline of the water closet.   (ii) This rear wall grab bar does not extend a minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side from the centerline of the water closet, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) The Plaintiff observed this condition, and it deters him from visiting America's Best Value Inn & Suites.   (iv) The action required to replace this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

u.  (i) In the women's restroom in the lobby, the side wall grab bar to the right of the toilet oriented while sitting on the toilet is only about 36 inches long and less than 42 inches long.   (ii) This side wall grab bar extends is less than the required minimum of 42 inches

(1065 mm) long, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) The Plaintiff observed this condition, and it deters him from visiting America's Best Value Inn & Suites. (iv) The action required to properly install a side wall grab bar in this accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

v.  (i) In the women's restroom in the lobby, the side wall grab bar to the right of the toilet oriented while sitting on the toilet only extends about 46 inches from the rear wall and less than 54 inches from the rear wall.   (ii) This side wall grab bar extends less than the required minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) The Plaintiff observed this condition, and it deters him from visiting America's Best Value Inn & Suites.   (iv) The action required to properly install a side wall grab bar in this accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

w.  (i) In the women's restroom in the lobby, the centerline of the toilet paper dispenser is not between 7 and 9 inches from the front of the water closet or toilet.   (ii) As shown in the photograph below, the centerline of this toilet paper dispenser is not located between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) The Plaintiff observed this condition, and it deters him from visiting America's Best Value Inn & Suites.   (iv) The action required to relocate or replace this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.



x.   (i) In the women's restroom in the lobby, the paper towel dispenser outlet is higher than 48 inches above the floor.   (ii) This paper towel dispenser outlet is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) The Plaintiff observed the height of this paper towel dispenser above the floor, and it deters him from visiting America's Best Value Inn & Suites.   (iv) The action required to relocate this paper towel dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

y.    (i) In the women's restroom in the lobby, the toilet seat cover dispenser is about 56 inches above the floor and higher than 48 inches above the floor.   (ii) This toilet seat cover dispenser outlet is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) The Plaintiff observed the height of this toilet seat cover dispenser outlet above the floor, and it deters him from visiting America's Best Value Inn & Suites.   (iv) The action required to relocate this toilet seat cover dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

z.    (i) In the women's restroom in the lobby, the bottom edge of the mirror's reflecting surface is about 52 inches above the floor and higher than 40 inches above the floor. (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) From his wheelchair, the Plaintiff could not see his full face in this mirror.   (iv) The action required to relocate this mirror's reflecting surface is easily accomplishable and able to be carried out without much difficulty or expense.

aa.    (i) In the women's restroom in the lobby, the toilet in the accessible toilet compartment does not have the flush control mounted on the open and wide side of the clear floor space.   (ii) As shown in the photograph below, the flush control for this toilet is not mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010, ADAAG § 604.6.   (iii) The Plaintiff observed this condition, and it deters him from visiting America's Best Value Inn & Suites as it would be very difficult to flush the toilet from his wheelchair.   (iv) The action required to install a flush control on this toilet on the open and wide side of the clear floor space is easily accomplishable and able

to be carried out without much difficulty or expense.



bb.   (i) In the women's restroom in the lobby, the coat hook is about 69 inches above the floor and higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff observed the height of this coat hook above the floor, and it deters him from visiting America's Best Value Inn & Suites.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i) In the women's restroom in the lobby, the liquid soap dispenser outlet is about 51 inches above the floor and higher than 48 inches above the floor.   (ii) This liquid soap dispenser is higher than 48 inches (1220 mm) above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to its height above the floor, the Plaintiff tried but could not reach the outlet to this liquid soap dispenser to get soap to wash his hands.

(iv) The action required to relocate this liquid soap dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

**BREAKFAST AREA**

dd. (i) In the self-service breakfast area, the juice machine dispenser keys, the bakery tong holder, the napkins above the pastry container, the waffle plates, most of the utensil holders, and the lever of the waffle maker when open, are all higher than 48 inches above the floor.   (ii) These things in the breakfast area are higher than 48 inches above the finish floor when the reach depth is less than 20 inches and are outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to their height above the floor, the Plaintiff could not dispense juice, use the tong, make himself a waffle, and reach some utensils.   (iv) The action required to relocate these things in the breakfast area and to put a written policy in place as to their proper locations is easily accomplishable and able to be carried out without much difficulty or expense.

**ACCESSIBLE GUESTROOM 102**

ee. (i) In accessible guestroom 102, the guestroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is about 12 inches and less than 18 inches.   (ii) This guestroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than the minimum required clearance of 18 inches, in violation of Federal Law 2010, ADAAG § 404.2.4. (iii)   In his wheelchair, the Plaintiff encountered this condition, and due to the lack of such maneuvering space it was very difficult for the Plaintiff to exit the room.   (iv) The action required to remedy this condition is easily accomplishable and able to be carried out without much difficulty or expense.

ff.   (i) In accessible guestroom 102, the refrigerator door requires tight grasping and pinching to open and close it.   (ii) The refrigerator door requires tight grasping and pinching to open and close it, in violation of Federal Law 2010, ADAAG § 309.4.   (iii) The Plaintiff could not open and close this refrigerator door with a loose grip or closed fist.   (iv)   The action required to replace this refrigerator or its door is easily accomplishable and able to be carried out without much difficulty or expense.

gg.   (i) In accessible guestroom 102, the clear floor or ground space between the beds and the chair is less than 30 inches.   (ii) The clear floor or ground space between the beds and the chair is less than 30 inches, in violation of Federal Law 2010, ADAAG § 305.   (iii) In his wheelchair, the Plaintiff encountered this condition.   (iv) The action required to move the bed or the chair is easily accomplishable and able to be carried out without much difficulty or expense.

hh.   (i) In accessible guestroom 102, the security door latch is about 52.5 inches above the floor and higher than 48 inches above the floor.   (ii) This security door latch is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) From his wheelchair, the Plaintiff could not operate this security door latch.   (iv) The action required to relocate this security door latch switch is easily accomplishable and able to be carried out without much difficulty of expense.

ii.   (i) In accessible guestroom 102, the night stand light switch is about 51 inches above the floor and higher than 48 inches above the floor.   (ii) This switch is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) The Plaintiff

observed the height of this switch above the floor, and it deters him from visiting America's Best Value Inn & Suites.   (iv) The action required to relocate this night stand light switch is easily accomplishable and able to be carried out without much difficulty of expense.

jj.   (i) In accessible guestroom 102, the clear floor space width between the chair and the controls for the air conditioning unit is only about 20 inches.   (ii) A clear floor space of 30 by 48 inches for the controls for the air conditioning unit is not provided to allow a forward or side approach to for a disabled individual in a wheelchair to operate the controls, in violation of Federal Law 2010, ADAAG § 305.3.   (iii) In his wheelchair, the Plaintiff tried to access the controls for the air conditioner but was blocked by the chair.   (iv) The action required to move the chair or to provide an alternate control, and to put in place a written policy to maintain clear floor space by the controls for the air conditioning unit is easily accomplishable and able to be carried out without much difficulty or expense.

**RESTROOM IN ACCESSIBLE GUESTROOM 102**

kk.   (i) For the restroom in accessible guestroom 102, the door pull side maneuvering clearance in a front approach perpendicular to the doorway is about 51 inches and less than 60 inches.   (ii) This door pull side maneuvering clearance in a front approach perpendicular to the doorway is less than the minimum required clearance of 60 inches, in violation of Federal Law 2010, ADAAG  404.2.4.   (iii) The Plaintiff encountered this maneuvering clearance space and it made it difficult for him to maneuver his wheelchair to enter the restroom.   (iv) The action required to increase this door pull side maneuvering clearance is easily accomplishable and able to be carried out without much difficulty or expense.

ll.   (i) In the restroom in accessible guestroom 102, the shower spray unit is about 75

inches above the shower floor and higher than 48 inches above the bathtub floor.   (ii) This shower spray unit is higher than 48 inches above the shower floor, in violation of Federal Law 2010, ADAAG §§ 607.6 and 308.2.   (iii) The Plaintiff encountered this condition, and he could not reach this shower spray unit to adjust it.   (iv) The actions required to put in place an adjustable bar and a written policy that after a guest leaves that the shower spray unit shall be returned to a height of 48 inches or less is easily accomplishable and able to be carried out without much difficulty or expense.

mm.      (i) In the restroom in accessible guestroom 102, the shower spray unit hose is only about 46 inches long and less than 59 inches long.   (ii) This shower spray unit hose is less than the minimum required length of 59 inches (1500 mm), in violation of Federal Law 2010, ADAAG § 608.6.   (iii) The Plaintiff observed the length of this hose, and it deters him from staying at America's Best Value Inn & Suites.   (iv) The action required to replace this shower spray unit and hose is easily accomplishable and able to be carried out without much difficulty or expense.

nn.   (i) In the restroom in accessible guestroom 102, the shower control valves are not installed on the back wall adjacent to the sidewall seat.   (ii) In this standard roll-in type shower compartment, where a seat is provided, the controls and faucets are not installed on the back wall adjacent to the seat wall and a maximum of 27 inches from the seat wall, in violation of Federal Law 2010, ADAAG § 608.5.2.   (iii) Due to the location of the controls and the faucets, the Plaintiff had great difficulty using this shower.   (iv) The actions required to relocate these controls and faucets is easily accomplishable and able to be carried out without much difficulty or expense.

oo.   (i) In the restroom in accessible guestroom 102, the rear wall grab bar does not

extend at least 12 inches on one side and at least 24 inches on the other side from the centerline of the toilet.   (ii) This rear wall grab bar does not extend a minimum of 12 inches (305 mm) on one side and a minimum of 24 inches on the other side from the centerline of the water closet or toilet, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) Due to the position and length of this rear wall grab bar, the Plaintiff had difficulty transferring himself from his wheelchair to sit on the toilet.   (iv) The action required to install a proper rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

pp.   (i) In the restroom in accessible guestroom 102, the rear wall grab bar is only about 24 inches long.   (ii) This rear wall grab bar is less than 36 inches long, in violation of Federal Law 2010, AGAAG § 604.5.2.   (iii) Due to the position and length of this rear wall grab bar, the Plaintiff had difficulty transferring himself from his wheelchair to sit on the toilet. (iv) The action required to install a proper rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

qq.   (i) In the restroom in accessible guestroom 102, the centerline of the toilet paper dispenser is not between 7 and 9 inches from the front of the water closet or toilet.   (ii) The centerline of this toilet paper dispenser is not located between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of the toilet paper dispenser, the Plaintiff could not obtain toilet paper from a normal siting position on the toilet.   (iv) The action required to relocate or replace this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

rr.   (i) In the restroom in accessible guestroom 102, the handle to the hairdryer in its

holder is about 55 inches above the floor, and higher than 48 inches above the floor.   (ii) This hairdryer handle in its holder is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) The Plaintiff observed this condition, and it deters him from staying at America's Best Vale Inn & Suites.   (iv) The action required to relocate this hairdryer is easily accomplishable and able to be carried out without much difficulty or expense.

**POOL**

ss.   (i) The swimming pool does not have an accessible means of entry and does not have a lift or sloped entry.   (ii) This pool, which has less than 300 linear feet of swimming pool wall, does not have an accessible means of entry, a swimming pool lift or sloped entry as shown in the photographs below, in violation of Federal Law 2010, ADAAG §§ 242.2, 1009.2, 1009.3.   (iii) Due to the lack of an accessible means of entry, the Plaintiff could not enter the pool.   (iv) The action required to install a lift in this pool is easily accomplishable and able to be carried out without much difficulty or expense.





28.     All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

29.     The discriminatory violations described in paragraph 27 are not an exclusive list of the Defendant's ADA violations.   In order to remedy this discriminatory situation, the Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access and to determine all of the areas of non-compliance with the Americans with Disabilities Act.

30.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

31.     Defendant has discriminated against the individual by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.   Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

32.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is

warranted.

33.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

34.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

35.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

36.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter the America's Best Value Inn & Suites and adjacent parking lot spaces, access aisles and walkways, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations

of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.     The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.     Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.     An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.     Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted,


s/Robert J. Vincze
Robert J. Vincze (MO #37687)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*